Scott, J.
The agreement or promise, on which this action is brought, is not, as we understand it, a mere promise that the defendant’s testator would thereafter make a donation to the plaintiff by his last will and testament. Were this its character, it is clear that on such a gratuitous executory promise no action could be maintained. But we think its terms purport to create a present indebtedness, or obligation to pay a sum of money, which is to be discharged in futuro—after the promisor’s death. The expression “to be paid out of my estate as provided in my will,” clearly imports that payment is not to be made during the life of the promisor. This circumstance can not invalidate the promise, if made upon sufficient consideration. It is an absolute promise to pay the plaintiff a specified sum of money when an event shall occur which sooner- or later, must happen. This promise is in writing, commencing with the formal words, “to all whom it may concern;” it was duly executed by the party making it; its execution was attested by a subscribing witness; and it was then delivered to the plaintiff, an institution incorporated for educational purposes, of a public character, and deriving its resources from the liberality of the community. By all this formality the parties must have intended something. We think it apparent, from the facts stated in the petition, that the parties' understood the writing in question to be a subscription by Love, in aid of the educational purposes contemplated by the incorporation of the plaintiff. Nor do we see that the writing lacks anything requisite to give it that character. No effect can properly be given to the stipulation that payment shall be made “ as provided in my will,” which would defeat the sub *24 stance of the promise itself—that is, the payment of the stipulated sum within a reasonable time after his death. This provision can have no further effect in favor of the promisor than to reserve for him the right of prescribing *by his will out of what fund the payment should be made, and of giving such time for its payment by his executor, in the process of settling the estate, as would be reasonably necessary for converting the assets into money, and such as would not substantially and unreasonably impair the value of the subscription. A failure to exercise the right, thus reserved, would not invalidate the subscription, but would leave it, if otherwise valid, to be paid by the executor within the time allowed him by law for the payment of debts due from the estate.
The material parts of the writing on which the plaintiff sues are: “I, Robert Love, agree to give......two hundred and fifty dollars to the Ohio Wesleyan Female College, said sum to be paid out of my estate as provided in my will.”
The question whether this writing be a subscrij>tion can scarcely be affected by the fact that the agreement is in terms “ to give ” the specified sum, or, by the further terms, that this-sum is “ to be paid ’’ out of the estate. Neither of these expressions is inconsistent with the idea of a subscription. Whether a subscription be voluntary and gratuitous or otherwise, can only be important by its bearing on the question of the existence or absence, of a legal consideration.
There is no reason to suppose that the testator himself at any time regarded this writing otherwise than as a subscription binding upon his executor; or that he intended to violate his promise by failing to make provision for its payment in his will. If he understood the writing to be an actual siibscription, and not a promise to bequeath a legacy, the provisions in his will which direct the payment of his debts, and provide his executor with means for that purpose, are all that good faith required of him. And, it may be •observed, that the exact sum, here agreed to be paid, is made a •charge upon the lands devised to his daughters, and is directed to be paid by them, whilst no other special appropriation is made of the fund thus raised. It would be unjust to his memory, therefore, to suppose that his construction of the agreement was such as must necessarily convict him of bad faith in the final disposition of his property. Were the terms of the instrument *such as to leave the intention doubtful, the construction thus apparently given, to it by the subsequent acts of the maker is entitled to regard.
*25 Nor does the instrument lose the character of a subscription by ■the fact that it is on a separate paper, unconnected with subscriptions made by others. This is clearly unessential; though we may remark,, in this connection, that, from the address of the instrument, “to all whom it may concern,” it would seem to have been intended as a spur to the liberality of other friends of a common -cause, and it is reasonable to suppose that the appeal would not be wholly unavailing.
It remains to be considered whether the petition shows a consideration sufficient in law, under the circumstances stated, to ¡support the agreement and promise sued upon, and thus to create .a valid obligation against the estate of defendant’s testator. That .any one or all of the facts stated in the petition, as constituting the -consideration of the testator’s promise, are sufficient in law to render the promise and agreement binding, independent of all statutory'enactments on the subject, is at least questionable. It is not -easy to reconcile the authorities on this subject, and it may, perhaps, be conceded that the weight of authority is against the •proposition.
But, however this may be, it has at all times been the decided ■policy of this state to favor and promote the interests of education .and the general diffusion of knowledge among the people. To this fact, the provisions of the constitution itself, our system of school laws, and the acts providing for "the incorporation of institutions -of learning, bear ample testimony.
The acts under which the present plaintiff -was incorporated are that of April 9,1852, “ to enable the trustees of colleges, academies, universities, and other institutions for the purpose of promoting •education, to become bodies corporate,” and the act to amend the -.same passed March 11,1853. S. & 0. Stat. 266, 269. These acts divide the institutions provided for into two classes: one class consisting of those institutions of which the property is owned by individuals in the shape of stock subscribed or taken, and the ■other embracing such as hold their property in trust, or derive it from “ donation, gift, devise, *or gratuitous subscription.” The plaintiff belongs to the latter class, which is clearly authorized, by necessary implication arising from various provisions of the statute, to procure funds for carrying out the purposes of their several organizations by voluntary subscriptions. And that the statute refers not merely to subscriptions which have been, in fact, paid, *26 appears, as we think, from the second section of the amendatoryact before referred to, which provides, among other things, for theappraisement at their true value in money of such subscriptions as may be exhibited to the appraisers.
This subscription, then, was authorized by law. It was evidently intended by the maker that the managing officers of the corporation should rely upon it as a part of the means and resources of the institution. It was but reasonable that they should rely upon the solemn pledge thus given, and incur liabilities upon the faith of it. And that such liabilities were, in fact, so incurred the petition distinctly avers. By accepting this subscription or written-promise of defendant’s testator, the corporation took upon itself the obligations of a trustee, and became bound faithfully to execute the trust by applying the proceeds, when paid, in furtherance of the objects for which the institution had been incorporated. All these facts, when viewed in connection with the provisions of the statute to which reference has been made, will not permit the plaintiff’s action to be defeated by an alleged want of a legal or valuable consideration.
On this subject, the case of Commissioners of the Canal Fund v. Perry, 5 Ohio, 57, and that of Collier v. Baptist Education Society, 8 B. Monroe, 68, are strongly in point, and require the demurrer to the plaintiff’s petition in this case to be overruled.
We accordingly reverse the judgment of the court of common pleas, overrule the demurrer to the plaintiff’s petition, and remand the cause to the court of common pleas for further proceedings.
Brinkerhoee, C. J., and Day, White, and Welch, JJ., concurred»